Whaley, Chief Justice,
delivered the opinion of the court:
The contractor in this case undertook dredging work for the defendant at Twelve Pole Bar, below U. S. Lock No. 28, Ohio Biver, for a distance of about three miles. The price named was 30 cents per cubic yard.
In the course of dredging there was discovered “an unexpectedly and unusually large percentage of boulders and loose rock mixed in the sand and gravel of the river bed.” The defendant therefore issued a change order increasing the contract price to 55 cents per cubic yard, “applying to work performed at Twelve Pole Bar only, on and after May 3,1933, only.”
There is no question about the effectiveness of this order. An appropriate extension of time for performance was given. No delay is in the case. The dispute is over the amount of compensation to which the contractor was entitled under the terms of the contract. Those terms are interpreted differently by plaintiff and defendant. The claim here sued on was presented to the administrative office, which forwarded it to the Comptroller General for settlement. The Comptroller General settled it, adversely to the claimant, and from this settlement no appeal was possible. Lack of compliance with formalities was not raised against the claimant by defendant’s accounting officers.
The contract depth of dredging was 11 feet below specified normal pool elevation. But since an exact depth is impossible to attain in practice the contractor was to be paid for dredging below the contract plane but not beyond one foot. If he dredged deeper than the maximum of one foot, he would not be paid for the excess; if he dredged less than the one-foot allowance he would be paid only for the amount actually dredged. If the channel depth was already 11 feet, there was to be no dredging. The allowable overdepth dredging was simply a one-foot tolerance, payable if done in the course of attaining the 11-foot depth. But overdepth dredging was not required.
The specifications stated that the maximum amount of allowable overdepth dredging was estimated to be 160,000 cubic yards, place measurement. All stated quantities were in terms of place measurement. The maximum amount of allowable *336 overdepth, dredging, for which payment would he made, was not to exceed 120,000 cubic yards.
Thus the estimated amount of allowable overdepth dredging was 160,000 cubic yards; the amount of payable overdepth dredging was stipulated to be 120,000 cubic yards. The one is 75% of the other.
The estimated quantity of material to be removed, exclusive of allowable overdepth was 240,000 cubic yards, and the specifications went on to provide that this amount of 240,000 cubic yards, plus 75% of the maximum “estimated” allowable overdepth, would be used as a basis for canvassing bids and determining the contract price. The estimated amount of allowable overdepth being 160,000 cubic yards, 75% thereof would be 120,000 cubic yards, which, added to 240,000 cubic yards, makes an estimated maximum quantity of pay dredging 360,000 cubic yards.
As it turned out there were at least 322,873 cubic yards dredged, but the defendant paid for 295,890 cubic yards only, on the ground that only that amount was payable under the terms of the contract.
There being no dispute as to the amount of material removed above the 11-foot plane, and the correctness of the settlement therefor, the claim is narrowed down to the amount of payable overdepth dredging.
Due to a change order, issued to meet unforeseen conditions, the price was increased to 55 cents from 30 cents per cubic yard beginning May 3, 1933. The defendant paid for overdepth dredging as follows:
Prior to May 3,1933: 543 cu. yds at 30</i__ $162.90
After May 2, 1938: 124,790 cu. yds at 554- 68, 634. 50
125,333 cu. yds- 68, 797. 40
The plaintiff claims settlement should have been as follows: Prior to May 8, 1933:
1,411 cu. yds. at 30¡¿- $423.30

After May 2, 1938:

150,815 cu. yds. at 55fS- 82,948. 25
.1 83,371.55 152,226 cu. yds.
*337 The difference in quantities is 26,893 cubic yards, with a claim of $14,574.15.
What the defendant did in settlement was to allow the plaintiff 5,333 cubic yards for material dredged in accumulated shoals, and to that add 120,000 cubic yards as the maximum payable overdredging. There appears to be no dispute as to this item of additional shoal dredging and elimi-náting the 5,333 cubic yards from consideration, the issue is whether plaintiff is to be paid for 146,893 cubic yards of over-dredging, or for only 120,000 cubic yards as the payable maximum.
It is understood that plaintiff claims the payable maximum to' be not 120,000 cubic yards, which is 75% of 160,000 cubic yards, the specified estimated allowable maximum, but 75% of 195,858 cubic yards, which is the calculated possible over-; depth dredging in the areas actually dredged, including 5.13 acres unnecessarily overdredged in channel limits, and 75% of 195,858 cubic yards is 146,893 cubic yards. See Finding No. 11 for other details. An area of 5.13 acres represents 8,276 cubic yards between the 11-foot and 12-foot planes, which reduces the gross of 195,858 cubic yards to 187,582 cubic yards, and 75% of 187,582 cubic yards, is 140,687 cubic yards, a reduction of 6,206 cubic yards. In no event would plaintiff be entitled to overdredging where there was already an 11-foot plane and no dredging of any sort required.
This difference of 6,206 cubic yards reduces the claimed quantity of 26,893 cubic yards to 20,687 cubic yards. The only overdepth dredging in areas where the depth was already 11 feet and no dredging therefor required and for which we have figures, occurred after May 2, 1933. See Finding No. 5. Computing 6,206 cubic yards at 55 cents per cubic yard, the new price, gives us $3,413.30, which, deducted from $14,574.15, leaves $1.1,160.85 for 20,687 cubic yards as that part of plaintiff’s claim now to be considered.
Paragraph No. 11 of the specifications provides that:
To cover unavoidable inaccuracies of dredging processes, material actually removed to a depth of not more *338 than one foot below the required depth will be estimated and paid for at full contract price provided that the maximum amount of allowable overdepth dredging for which payment will be made shall not exceed 120,000 cubic yards place measurement from Twelve Pole Bar,
The maximum limitation of 120,000 cubic yards is specific. The specifications estimated the “maximum amount of allowable overdepth dredging” to be 160,000 cubic yards. The maximum payable overdepth dredging of 120,000 cubic yards is thus 75% of the estimated maximum allowable overdepth dredging.
The specifications also estimated the quantity of material to be removed, exclusive of overdepth, to be 240,000 cubic yards, and went on to say that this quantity of 240,000 cubic yards, “plus 75 per cent of the maximum quantity of estimated allowable overdepth, will be used as a basis for canvassing bids, and for determining the amount of the consideration of the contract.”
Since 75% of the maximum quantity of estimated allowable overdepth was 120,000, this gave a total of 360,000 cubic yards of estimated payable dredging, and 400,000 cubic yards of required and allowable dredging. The difference of 40,000 cubic yards represents the quantity that might permissibly be dredged, for which no payment would specifically be made.
In view of the precise wording of the specification, “that the maximum amount of allowable overdepth dredging for which payment will be made shall not exceed 120,000 cubic yards,” allowance must be restricted to 120,000 cubic yards. The specification does not say 75% of the actual over dredging and the wording of the contract may not be altered. There is no room for the inference that plaintiff would make.
But the plaintiff’s claim is not confined to the contract price of unpaid overdredging. It says it is entitled to be paid extra costs arising because the dredging was shallower than represented, extending over a broader area.
The contract did not guarantee or represent that there would be 360,000 cubic yards of payable dredging. The *339 overburden of 240,000 cubic yards was given expressly as an estimate. The underlying material, that is to say, the material between the 11-foot and 12-foot planes, was also expressly estimated, and the estimate was 160,000 cubic yards, of which the maximum payable was 120,000 cubic yards.
If 160,000 cubic yards of material is evenly laid out, one foot in depth, it will cover 99.2 acres. This acreage was used by the plaintiff in preparing its bid.
With a given amount of material, the cost per cubic yard of dredging would increase as the area dredged increased. So-called shallow-face dredging is more expensive per cubic yard than localized dredging.
By the use of planimeter it is ascertained that the area ultimately dredged was 121.4 acres. Eliminating 5.13 acres where overdepth dredging was done notwithstanding the contract depth already existed, leaves 116.27 acres of dredging. This is 17.07 acres in excess of the 99.2 acres that the plaintiff had counted on as the area to be dredged.
Plaintiff’s claim on this phase of the case is the bulk of the entire claim. The evidence totally fails to justify plaintiff’s claim on this item. It is based entirely on assumptions made from estimates. This is not a basis for the allowance of a claim.
Plaintiff is not entitled to recover and its petition is dismissed. It is so ordered.
Madden, Judge; Whitaker, Judge; and Littleton, Judge, concur.
Jones, Judge, took no part in the decision of this case.